Williamson *v.* Updike.

I. H. WILLIAMSON, late Ordinary vs. S. UPDIKE and OTHERS.

Since the act of the 2d of March, 1795, *Rev. Laws* 174, entitled " An act concerning executors, and the administration and distribution of intestates' estates," no doubt can be raised, that a suit on an administration bond, ought to be entitled, " The Ordinary or Surrogate-General of New Jersey."

This court will hold those parts of an administration bond valid, which make it a bond to the Ordinary or Surrogate-General of the State, according to the statute, and will treat the individual name, and words " successors and assigns," as surplusage, not required by statute, but useless matter.

Whenever a wrong practice comes before a court, and especially if it be contrary to a statute, it is their duty to correct it.

A plaintiff will be allowed to amend his writ and declaration, without the payment of costs, when the practice and law have been unsettled.

This was an action of debt brought upon an administration bond. The declaration was as follows :

" New Jersey Supreme Court—Of the term of May, in the year of our Lord, one thousand eight hundred and thirty-three.

Somerset county, ss.   Samuel Updike, Cornelius Grover, Levi Updike and Ralph Johnson, (the writ as to the said Levi Updike, being returned by the sheriff, not in my bailiwick) were summoned to answer Isaac H. Williamson, esquire, late ordinary or surrogate-general of the state of New Jersey, of a plea that they render unto him the sum of six thousand dollars, which to him they owe, and from him unjustly detain, &c. and thereupon, the said Isaac H. Williamson, late ordinary or sur. rogate general as aforesaid, by Richard S. Field, his attorney, complains—For that whereas, the said Samuel Updike, Cornelius Grover, Levi Updike and Ralph Johnson, heretofore, to wit, on the first day of March, Anno Domini, one thousand eight hundred and nineteen, at Bridgewater, in the county of Somerset and State of New Jersey, by their certain writing, obligatory, sealed with their seals, and to the court now here shown, the date whereof is the day and year aforesaid, acknowledged themselves to be held and firmly bound unto the said Isaac H. Williamson, ordinary or surrogate-general, as aforesaid, in the said sum of six thousand dollars above demanded, to be paid to the said Isaac H. Williamson, ordinary or surro-

Williamson *v.* Updike.

gate-general, as aforesaid, when they should be thereunto afterwards requested. Yet the said defendants, (although often requested so to do) have not, nor hath either of them as yet, paid the said sum of six thousand dollars above demanded, or any part thereof, to the said Isaac H. Williamson, late ordinary or surrogate-general, as aforesaid ; but have hitherto wholly neglected and refused, and still do neglect and refuse so to do, to the damage of the said Isaac H. Williamson, late ordinary or surrogate-general, as aforesaid, of two hundred dollars, and therefore he brings his suit, &c.

To this declaration, the defendants filed the following demurrer :

"And the said Samuel Updike, Cornelius Grover, Levi Updike, and Ralph Johnson, by James S. Green, their attorney, come and defend the wrong and injury when, &c. and crave oyer of the said writing obligatory, in the said declaration mentioned, which is given, and is in these words :

Know all men by these presents, that we, Samuel Updike, of the county of Somerset, Cornelius Grover, Levi Updike, and Ralph Johnson, are held and firmly bound unto Isaac H. Williamson, ordinary or surrogate-general of the said state, in the sum of six thousand dollars, lawful money of the said state, to be paid to the said Isaac H. Williamson, his successors or assigns, to which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents, sealed with our seals, and dated the first day of March, Anno Domini, one thousand eight hundred and nineteen.

They also crave oyer of the condition of the said writing obligatory, which is granted, and is as follows :

The condition of this obligation is such, that if the above bounden Samuel Updike and Cornelius Grover, administrators of all and singular, the goods, chattels, and credits of William Updike, late of Hunterdon county, deceased, to make or cause to be made, a true and perfect inventory of all and singular, the goods, chattels, and credits of the said deceased, which have, or shall come to the hands, possession, or knowledge of

the said Samuel Updike and Cornelius Grover, or into the hands or possession of any other person or persons for the said Samuel Updike and Cornelius Grover, and the same so made, do exhibit or cause to be exhibited, into the surrogate's office of the county of Hunterdon, at or before the expiration of six calendar months from the date of the above written obligation, and the same goods, chattels and credits, and all other goods, chattels and credits of the said deceased, which at the time of the death of the aforesaid William Updike, or which at any time after, shall come to the hands or possession of the said Samuel Updike and Cornelius Grover, or into the hands or possession of any other person or persons, for the said Samuel Updike and Cornelius Grover, do well and truly administer according to law, and further, do make or cause to be made, a just and true account of their administration, within twelve calendar months from the date of the above written obligation; and all the rest and residue of the said goods, chattels and credits, which shall be found remaining upon the account of the said administration, the same being first examined and allowed of, by the judges of the Orphans Court of the county, or other competent authority, shall deliver and pay unto such person or persons respectively, as is, are, or shall by law be entitled to receive the same. And if it shall hereafter appear that any last will and testament was made by the deceased, and the executor or executors therein named, or any other person or persons do exhibit the same into the said Prerogative Court, making request to have it allowed and approved; if the said Samuel Updike and Cornelius Grover, being thereunto required, do render and deliver the said letters of administration, (approbation of such testament being first had and made) to the said court, then the above obligation to be void and of none effect, or else to remain in full force and virtue. Which being read and heard, the said Samuel Updike, Cornelius Grover, Levi Updike and Ralph Johnson, say, that the said declaration, and the matters therein contained in manner and form as the same are above stated and set forth, are not sufficient in the law for the said Isaac H. Williamson, esquire, late ordinary or surrogate-general of the state of New-Jersey, to have or maintain his aforesaid action thereof against them, and that they were not

Williamson *v.* Updike.

bound by the law of the land to answer the same, and this they are ready to verify : wherefore, for want of a sufficient declaration in this behalf, the said Samuel Updike, Cornelius Grover, Levi Updike and Ralph Johnson, pray judgment: and that the said Isaac H. Williamson, may be barred from having or maintaining his aforesaid action thereof, against them. And the said Samuel Updike, Cornelius Grover, Levi Updike and Ralph Johnson, according to the form of the statute in such case made and provided, state and shew to the court here, the following causes of demurrer to the said declaration, that is to say, that they, the said Samuel Updike, Cornelius Grover, Levi Updike and Ralph Johnson, are called upon to answer unto Isaac H. Williamson, esquire, as late ordinary or surrogate-general of the state of New Jersey, when by their bond they are held and firmly bound unto the said Isaac H. Williamson, ordinary or surrogate-general of the said state, his successors or assigns; that the said declaration does not set forth who is the ordinary or surrogate-general of the state of New Jersey, at the time of the commencement of this action ; that the plaintiff has no legal right to commence an action, he being no longer ordinary or surrogate-general of the state of New Jersey; that as the bond upon which the action is brought, was given by the said Samuel Updike, Cornelius Grover, Levi Updike and Ralph Johnson, to secure the faithful performance of the duties of administrators on the part of the said Samuel Updike and Cornelius Grover, the said bond can be prosecuted only in the name of the ordinary or surrogate-general for the time being, and not in the name of the late ordinary ; that it does not appear by the said declaration, but that the said Samuel Updike, Cornelius Grover, Levi Updike and Ralph Johnson, have paid the money demanded, to the ordinary, who was the successor of the said plaintiff; that the plaintiff has not assigned in his declaration any breach or breaches of the bond or its condition; and also, that the said declaration is, in other respects, uncertain, informal and insufficient."

*J. S. Green,* in support of the demurrer.

*R. S. Field,* contra.

The opinion of the court was delivered by Justice Ford.

FORD, J. The defendants are summoned to answer Isaac

H. Williamson, *late* ordinary or surrogate-general of the state of New-Jersey, in debt upon an administration bond, wherein they are bound as follows, to wit: " *To Isaac H. Williamson, ordinary or surrogate-general of the state of New-Jersey, in the sum of six thousand dollars, to be paid to the said Isaac H. Williamson, his successors or assigns;* " and to a declaration in his name as ordinary, &c. they demur, and shew specially for causes of demurrer, that as he is no longer ordinary, but only late ordinary, as the writ imports, the prosecutor had no right to sue in his name as late ordinary, but should have used the name of his *successor* who was ordinary at the time of ordering the bond to be prosecuted, and more especially as the breach is laid of non payment to Isaac H. Williamson, without any denial of payment to Samuel L. Southard, his successor. And on these pleadings, the counsel not only take the question to be which of the two names ought to have been used in this case, but have shed all the light and learning of the books upon it, whereas the matter, in my view, turns on another point, and that is, whether their names ought not both to be omitted, and the suit to be entitled, " The Ordinary or Surrogate-General of New-Jersey; " and it certainly would not have been sued in any other form, if the surrogate had drawn this administration bond in the manner it is directed to be done in the eleventh section of the act concerning executors and the administration, and distribution of intestates' estates. *Rev. Laws* 176. This section directs the surrogates of the respective counties, to take these administration bonds to " the ordinary or surrogate-general of the state," and declares ·by the twelfth section, that such administration bonds shall be *good* to all intents and purposes, and *pleadable* in any court of justice; thereby making them valid by the statute, whether they would be so or not at the common law, and superseding all enquiry whether the ordinary is a corporation sole or the office of ordinary, a department of the government, and no more. Therefore no doubt need or can be raised against an action entitled, " the ordinary or surrogate general of New-Jersey," on an administration bond, since the statute of the 2d of March, 1795, however it might possibly have been before that date, if the surrogates had taken these bonds in the manner they are directed to take them by statute.

Williamson *v.* Updike.

But they seem to have concluded, that a better bond could be compiled out of the old forms in their offices, with the aid of their own ingenuity, than this one directed in the statute, and so instead of taking it to " The Ordinary or Surrogate-General of the State," they introduced into it the christian and sir name of the officer for the time being; and lest his going out of office should impair its validity, they foisted in the words " *his successors and assigns*," when they found no such words in the statute. Thus, what is perfectly plain and simple in the statute, becomes so complicated by compounding the individual name with the public office, that it sows the seeds for a fertile harvest of litigation. Not only creditors, but the next of kin, who consist mostly of widows and orphans, not very able to defray legal expenses, may have to argue numberless questions arising from this illegal complication, before they can come at the merits of their case. Among these, the question argued by counsel on this demurrer, is one notable instance, whether the suit shall name the late ordinary to whom the bond was given by name, or whether it shall name his successor, to whom it was not *given*, but is only made payable. And if this were the only dispute that could arise out of it, the evil might be tolerable; but no sagacity can forsee them all. If the bond is not put in suit till after ten successions, and the last one is to sue, may he style himself successor of the *first*, when he is successor of the *ninth*, or must he set out all these successions in the declaration, according to their order and dates ? Or suppose the successor to die before issue joined, must not the whole action abate with costs ; or if after issue joined, could it be continued by the *successor* as *originally* maintainable by *executors* or *administrators* when it was not so maintainable? Or must the court, under the third section of the act, *Rev. Laws*, 164, make the words executors and administrators mean *successors and assigns* by construction? Or suppose an action in the name of *him* who was ordinary at the time, should be depending when he goes out of office, can it be continued in his name, and judgment be awarded to him, when he is no longer ordinary ; or must a new action be brought in the name of his successor, and if he die, or be removed while this second action is depending, must a third one be brought in the name of his successor? Is this bond as-

Williamson v. Updike.

signable, which is thus payable to *assigns;* is it releasable; is it payable elsewhere than in the court of the ordinary? It will not do to say that some of these questions are settled by course of practice founded on no adjudications, for whenever a wrong practice comes before a court, and especially if it be contrary to a statute, it is their duty to correct it; and not one of these points has even been adjudicated on, so far as I know. They afford a rich harvest for legal controversies, and with a multitude of other difficulties not now mentioned, nor capable of foresight, will all grow out of a form of bond not warranted by the statute; for not one of them could ever arise if it had been made to the ordinary or surrogate-general, because it is a department of the government that never dies nor changes, but is as permanent as the constitution. If these bonds are to be upheld merely because they are so drawn, and that in defiance of an act of the legislature, there being no end to the vagaries of the mind, bonds directed to be made to the state of New Jersey, may be drawn next to the state and *its successors.* The court is now put to the alternative of sanctioning this ill-formed bond, and letting loose on society, a host of litigious consequences, or of taking its stand on the statute, and cutting them off at one legal blow. An alternative requiring great deliberation, if an adherence to the statute on one hand, must, on the other hand, render the bonds invalid, that exist in such numbers in the offices of the different counties, and are the general security of creditors and next of kin to those who have died intestate. But I think this may be avoided, by holding those parts valid, which make it a bond to the ordinary or surrogate-general of the state, according to the statute, and treating the individual name and words successors and assigns, as surplusage, not required by the statute, but useless matter, that shall not injure those parts that are good, "*utile per inutile non viceatur.*" And the case of *Livingston, Governor, &c.* v. *Combs & wife,* in *Cox's Rep.* 42, accords in principle with this doctrine, where the court treated it in substance and legal effect, as a bond to the ordinary, and its being given to Franklin or Livingston, as being wholly immaterial. The court made it operate according to its legal effect, not according to the words; and held it to be, what it was in law, and what it was intended to be by the parties. So

Williamson *v.* Updike.

the present bond is given for public, not private purposes, and ought not to be taken in a private name. As it is taken to the ordinary and surrogate-general, it is conformable to the statute, and ought not to be treated otherwise, for merely explaining who the officer was at the time of taking it, for whoever he was, it is still a good bond to the ordinary.

In requiring that the writ, on an administration bond like this, should be to answer unto the ordinary or surrogate-general of the state of New Jersey, without any personal name, I can see no inconvenience except, that to save a variance in the declaration from the written instrument, the name of the individual, must therein be set out, as that the defendants acknowledged themselves held and firmly bound to Isaac H. Williamson, ordinary or surrogate-general of the state of New Jersey, in &c. to be paid to the said Isaac H. Williamson, ordinary, &c. when &c. yet that they had not paid to the ordinary, &c. These few words may be necessary for preserving a technical correspondence between the declaration and the instrument, until surrogates can be induced to draw these bonds as the statute directs; but this inconvenience, merely for avoiding a variance, bears no proportion to the numerous evils to be avoided on the other hand, the whole of which might not be developed under half a century.

I conclude that the demurrer is sustainable, but not for any of the special reasons assigned; it is because in pleading we are to look back to the first error, which is, in not requiring the defendants to answer to the ordinary, &c. and that judgment must be rendered for the defendants, unless the prosecutor shall apply for leave to amend his writ and declaration, in which case it ought to be granted, not on payment of costs where the practice and law have been so very loose and unsettled; but let the costs of amendments on both sides, if applied for, abide the event of the suit.

The following is a copy of the rule entered on the minutes of the court.

" It is ordered that the plaintiff in the above suit, have leave to amend the writ, declaration and warrant of attorney, by striking out the name of Isaac H. Williamson wherever the

same occurs, so that the suit may proceed in the name of the ordinary or surrogate-general, and to insert in the declaration, the words, " by the name and description of Isaac H. Williamson, ordinary or surrogate-general of the state of New Jersey," so as to avoid a variance between the declaration and the bond, and that these amendments be made without the payment of costs.  And it is further ordered, that the defendant plead within thirty days after the service of a copy of the amended declaration, or that judgment be entered against him by default."

CITED in *Halsted* v. *Fowler, et al..* 2 *Zab.* 51.